## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **ROSALINDA GODWIN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00607-O-BP** |
| | § | |
| **COMMISSIONER OF** | § | |
| **SOCIAL SECURITY,** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Rosalinda Godwin ("Godwin") applied for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplement Security Income ("SSI") under the Social Security Act ("SSA"). The Commissioner denied her application, deciding that she was not disabled. Godwin exhausted her administrative remedies and filed an appeal in this Court. The case was automatically referred to the undersigned pursuant to Special Order 3. At issue is whether substantial evidence supports the decision of the Administrative Law Judge ("ALJ") that Godwin is generally capable of performing light work and whether the ALJ applied the correct legal standard in reaching his conclusion. Finding that substantial evidence supports the decision and that the ALJ applied the correct legal standard, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's denial of Godwin's application and **DISMISS** the case.

## I.    BACKGROUND

Godwin first applied for DIB and SSI on May 4, 2020, alleging disability. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 8-1 at 173, 175. The Commissioner denied her application initially and upon reconsideration. *Id.* at 125, 135. Godwin challenged the Commissioner's denial in a hearing before an ALJ, who affirmed the Commissioner's decision. *Id.* at 25, 142.

Godwin appealed the decision to the Social Security Appeals Council ("AC"), which denied review. Tr. 15. "[T]he Commissioner's decision does not become final until after the [AC] makes its decision denying the claimant's request for review." *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). Thereafter, Godwin filed this civil action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1.

## II.    STANDARD OF REVIEW

Titles II and XVI of the SSA govern the DIB and SSI programs, respectively. *See* 42 U.S.C. §§ 401-434, 1381-1383f. Claimants seeking benefits under either program must prove that they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating the "relevant law and regulations governing the determination of disability under a claim for [DIB] are identical to those governing the determination under a claim for [SSI]"). A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* §§ 404.1572, 416.972. Second, the claimant must have a severe impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets

or equals an impairment in the federal regulatory list. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpart P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* §§ 404.1520(a)(4), (e)-(f), 416.920(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis*, 837 F.2d at 1382. "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th

Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III.    ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 28-39. First, the ALJ found that Godwin had not engaged in substantial gainful activity since March 15, 2020. *Id.* at 31. Second, he found three medically severe impairments: depression with insomnia, the severe combination of hypertension and high cholesterol, and the severe combination of osteoarthritis of the right elbow and right shoulder. *Id.* Third, he identified no impairment or combination of impairments that qualified under the federal regulatory list. Tr. 32.

The ALJ then assessed Godwin's RFC:

After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). That is, she can lift and/or carry 20 pounds occasionally and 10 pounds frequently, can stand and/or walk for 6 hours in an 8-hour workday, and can sit for 6 hours in an 8-hour workday. However, she can only occasionally climb ladders, ropes, and scaffolds and can frequently perform the other postural functions. Also, she can occasionally reach overhead and can frequently do the other manipulative functions. Finally, she can understand, remember, and carry out simple instructions without limitation, can frequently work with detailed instructions, and cannot work with complex instructions. Can

without limitations engage with supervisors, co-workers & the public. Can without limitations maintain attention and concentration & work at a production rate pace. Can without limitations ask simple questions or request assistance, and adapt to change in routine work settings.

Tr. 34. Using this RFC and relying on testimony from a vocational expert ("VE"), the ALJ determined at step four that Godwin could perform PRW, specifically as an automobile accessory salesperson. *Id.* at 38. The step-four finding meant that Godwin was ineligible for DIB or SSI because she was not disabled. *Id.* at 38-39; *see Lovelace*, 813 F.2d at 58. After concluding that Godwin's work experience and RFC with additional limitations still allowed her to perform the requirements of another job, the ALJ then found Godwin "not disabled" under §§ 216(i); 223(d); and 1614(a)(3)(A) of the SSA. *Id.* at 39.

Godwin urges reversal, arguing that (1) the ALJ failed to resolve two direct conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"); (2) substantial evidence does not support the RFC's mental limitations; and (3) the ALJ erred as a matter of law when he declined Godwin's request for an updated consultative examination without any reasonable explanation. ECF No. 12 at 8.

### A. No direct conflict existed between the RFC and the DOT description of automotive accessory salesperson, and Godwin did not raise an indirect conflict at the ALJ hearing.

Godwin argues that the ALJ erred by failing to resolve two direct conflicts between the VE testimony and the DOT. ECF No. 12 at 10. The DOT and the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") contain a comprehensive list of jobs throughout the United States with assessments for each. *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 609 (E.D. Tex. 2009). Under SSR 00-4p, the ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the VEs and information in the" DOT. 2000 WL 1898704, at *1 (S.S.A. 2000).

> [C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000). Therefore, unless a "direct and obvious conflict" exists between the VE's testimony and the DOT, the ALJ has met his burden. *See* SSR 00-4p, 2000 WL 1898704, at *4; *Carey*, 230 F.3d at 146 (when "direct and obvious conflict" exists between VE's testimony and the DOT, the ALJ must resolve conflict by determining whether VE's explanation is reasonable and thus more reliable than DOT); *Nichols v. Comm'r of Soc. Sec. Admin.*, No. 10-cv-0651, 2011 WL 2669056, at *6 (N.D. Tex. June 10, 2011) (If an indirect conflict "did not undergo adversarial development at administrative hearing, [VE] testimony may be relied upon without resolving the conflict as long as the record reflects an adequate basis for doing so.") (citation omitted), *rec. adopted*, 2011 WL 2669099 (N.D. Tex. July 6, 2011).

Thus, the Court must first determine whether a "direct and obvious" conflict exists. An apparent conflict may arise (1) when the VE's testimony regarding "the exertional or skill level required for a particular job is facially different from" that indicated in the DOT; or (2) when the VE's testimony creates a conflict between the ALJ's RFC determination and the DOT job description. *Carey*, 230 F.3d at 145-46. Indirect and implied conflicts occur under various unique circumstances when VEs testify as to an individual claimant's capabilities. *See id.* at 146.

1. <u>No direct conflict exists between Godwin's RFC restriction to only "frequently work with detailed instructions" and the DOT description of automotive accessory salesperson.</u>

Godwin argues that the RFC finding that she "can frequently work with detailed instructions" (Tr. 34) directly conflicts with the automobile accessory salesperson job. ECF No. 12 at 11-14. The DOT contains a scale known as the general educational development reasoning

level ("Reasoning Level") which provides an "estimation of the general mental and psychological capabilities an individual needs to perform that job, ranked from a low of [R]easoning [L]evel 1 to a high of [R]easoning [L]evel 6." *David M. v. Kijakazi*, No. 3:22-CV-02166-N-BT, 2023 WL 8007388, at *4 (N.D. Tex. Oct. 11, 2023) (citing DOT, App. C, 1991 WL 688702 (4th ed. 1991)), *rec. adopted*, No. 3:22-CV-02166-N-BT, 2023 WL 8006408 (N.D. Tex. Nov. 17, 2023). The DOT classifies the job of automobile accessory salesperson as a semi-skilled job with a Reasoning Level of four. DOT, Vol. 1, at 227 (available at www.occupationalinfo.org). Reasoning Level four provides as follows:

> 04 LEVEL REASONING DEVELOPMENT
>
> Apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form. (Examples of rational systems include: bookkeeping, internal combustion engines, electric wiring systems, house building, farm management, and navigation.)

*Id.* at App. C. Also Relevant to Godwin's argument is Reasoning Level two, which provides:

> 02 LEVEL REASONING DEVELOPMENT
>
> Apply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

*Id.* (emphasis added). Thus, Godwin argues, "all jobs having greater than a GED reasoning of level two," such as that of automobile accessory salesperson "require the performance of at least detailed tasks and following at least detailed instructions to perform the job duties." ECF No. 12 at 12. And Godwin's RFC, limiting her to following detailed instructions only frequently, cannot carry out such detailed instructions to the extent a Reasoning Level four job requires. *Id.* at 12-13.

But "the use of the word 'detailed' in the DOT is not equivalent to the word 'detailed' as used in the Social Security regulations." *Webb v. Astrue*, No. CIV.A. 408-CV-747-Y, 2010 WL

1644898, at *12 n.10 (N.D. Tex. Mar. 2, 2010) (internal quotation marks and citation omitted), *rec. adopted*, No. 4:08-CV-747-Y, 2010 WL 1644697 (N.D. Tex. Apr. 22, 2010); *McMillian v. Colvin*, No. 4:12-CV-661-A, 2014 WL 61172, at *5 (N.D. Tex. Jan. 6, 2014). "The Social Security Regulations have only two categories of abilities with regard to understanding and remembering instructions-either 'short and simple,' or 'detailed' or 'complex,' while the DOT has six levels for measuring this ability." *Abshire v. Astrue*, No. CIV.A. CV07-1856-LC, 2008 WL 5071891, at *8 (W.D. La. Oct. 29, 2008) (cleaned up), *rec. adopted*, No. CIV A CV07-1856-LC, 2008 WL 5746955 (W.D. La. Dec. 1, 2008). These six levels start at "the most mundane" and "mov[e] up to the most complex" in a much more "graduated, measured, and finely tuned" way than the Social Security Regulations. *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005). The "blunderbuss" approach that Godwin urges "necessarily mean[s] that all jobs with a [R]easoning [L]evel of two or higher" would be "encapsulated within the regulations' use of the word detail[,]" which is not "in keeping with the finely calibrated nature in which the DOT measures a job's simplicity." *Id*. The question, therefore, is simply whether an apparent conflict exists between the RFC limiting the plaintiff to "frequently work with detailed instructions" and the Reasoning Level of four.

Many courts have grappled with the question of whether a claimant limited to simple tasks can perform jobs that the DOT classifies as requiring Reasoning Level three. The Seventh and Eight Circuits have found no conflict, while the Ninth and Tenth Circuits have found one. *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (no conflict between job requiring reasoning level three and claimant's limitation to simple work); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (no conflict with claimant's inability to do complex work where job in question required reasoning level three); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (claimant's

8

limitation to "simple and routine work tasks" not consistent "with the demands of level-three reasoning" because claimant's RFC was more consistent with level two than level three reasoning); *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (holding "that there is an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 Reasoning").

Judges of this Court who have confronted the issue likewise are divided. *Compare McMillian*, 2014 WL 61172, at *5 ( joining the "series of cases that have held that a job with a [Reasoning Level] of 3 is not inconsistent with an RFC determination that limits a claimant to the performance of simple, routine work tasks"), *with Otte v. Comm'r, Soc. Sec. Admin.*, 3:08-cv-2078-P BF, 2010 WL 4363400, at *8 (N.D. Tex. Oct. 18, 2010) ("Reasoning Level 3 is not compatible with a restriction to simple, routine, repetitive work."), *rec. adopted*, 3:08-cv-2078-P BF, 2010 WL 4318838 (N.D. Tex. Oct. 27, 2010), *and Davis v. Astrue*, No. 3-06-cv-883-B, 2008 WL 517238, at *5 (N.D. Tex. Feb. 27, 2008) (claimant limited to following simple or detailed instructions not capable of performing job with reasoning level three).

However, most the Court's judges have found that the DOT description of Reasoning Level three does not "on its face, indicate that jobs with a [Reasoning Level] of 3 involve more than simple, repetitive work." *Gaige v. Astrue*, No. 4:12-CV-008-A, 2013 WL 1291754 (N.D. Tex. Mar. 1, 2013), *rec. adopted*, *Gaige v. Colvin*, No. 4:12-CV-008-A, 2013 WL 1286289 (N.D. Tex. Mar. 29, 2013) *Caronia v. Colvin*, No. 4:12-cv-595-Y, 2013 WL 5192904, at * 6 (N.D. Tex. Sept. 13, 2013) (same); *Longoria v. Colvin*, No. 3:13-cv-1690-B-BK, 2014 WL 2777473, at *8 (N.D. Tex. May 21, 2014), *rec. adopted*, No. 3:13-cv-1690-B, 2014 WL 2777375 (N.D. Tex. June 18, 2014) ("simple, repetitive work" does not directly conflict with DOT Reasoning Level three jobs). Indeed, *Smith v. Colvin*, which Godwin relies on, stands for this proposition. No. 313-CV-1884-N, 2014 WL 1407437, at *6 (N.D. Tex. Mar. 24, 2014) ("The weight of the authority supports a

determination that a limitation to 'simple, repetitive, and routine tasks' could support work with a reasoning level of two or three.") (collecting cases), *rec. adopted*, No. 3:13-CV-1884-N, 2014 WL 1407440 (N.D. Tex. Apr. 11, 2014); ECF No. 12 at 12.

Under this authority, a finding of Reasoning Level three does not directly conflict with an RFC restricting a plaintiff to short and simple instructions. With this in mind, the narrow issue before the Court is whether a Reasoning Level of four directly conflicts an RFC limiting a plaintiff to "frequently work with detailed instructions."

Although fewer courts have analyzed this issue, the ones that have are once again split. The Western District of Oklahoma, following the Tenth Circuit's reasoning in *Hackett*, has found that an apparent conflict exists where the ALJ limited the claimant to "simple and detailed tasks and instructions, but not complex tasks" but found that the claimant could perform a Reasoning Level four job. *Collins v. Comm'r of Soc. Sec. Admin.*, No. CIV-17-0018-HE, 2017 WL 4204036, at *3 (W.D. Okla. Sept. 21, 2017). Similarly, the Southern District of California, following the Ninth Circuit's decision in *Zavalin* found that "there is an apparent conflict between the opinion that [the p]laintiff is capable of understanding, remembering, and carrying out simple one or two-step job instructions, but has some limitation in following detailed and complex instructions, and the demands of Reasoning Level 4." *Janet T. v. Kijakazi*, No. 22-CV-00616-JLB, 2023 WL 6168248, at *7 (S.D. Cal. Sept. 20, 2023); *see also Yanez-Palmer v. Comm'r of Soc. Sec. Admin.*, No. CV-19-05865-PHX-DJH, 2020 WL 6589503, at *7 (D. Ariz. Nov. 10, 2020) (finding that there was an apparent conflict between the plaintiff's limitation to simple, repetitive tasks and a job that required Reasoning Level four responsibilities); *King v. Comm'r of Soc. Sec.*, No. 1:12-CV-1686 GLS, 2013 WL 5567112, at *3 (N.D.N.Y. Oct. 9, 2013) (same).

Contrarily, the Northern District of Illinois found that no apparent conflict existed between a Reasoning Level of four and the ALJ's conclusion that the plaintiff retained the capacity to perform simple and routine tasks, specifically as it pertained to the job of information clerk. *Tina I. v. Kijakazi*, No. 3:20-CV-50327, 2022 WL 80245, at *5 (N.D. Ill. Jan. 7, 2022) (following Seventh Circuit precedent). Some courts have found that no apparent conflict exists "between the [R]easoning [L]evel 4 requirements outlined in the [DOT] and a[n RFC] for simple and semi-detailed tasks." *Watson v. Saul*, No. 9:18-CV-01663-JMC, 2020 WL 1527064, at *2 (D.S.C. Mar. 31, 2020); *see also Olson v. Berryhill*, 15-CV-172-WMC, 2017 WL 4217175, at *4 (W.D. Wis. Sept. 21, 2017) (affirming an ALJ decision in which the RFC limited the claimant to "understand, carryout and remember routine work with a" Reasoning Level of 4 or less); *Hopper v. Astrue*, No. 09 C 7884, 2011 WL 1813007, at *9 (N.D. Ill. May 4, 2011) (affirming an ALJ decision in which the RFC limited the claimant to "simple, routine and repetitive tasks" and the jobs identified by the VE required a Reasoning Level of three or four); *Imran v. Colvin*, No. CV 14-1943-PLA, 2015 WL 5708500 (C.D. Cal. Sept. 28, 2015) (finding "no apparent conflict between [the] plaintiff's limitation to moderately complex tasks and the demands of level three and level four reasoning occupations as there might have been had she been limited to simple, routine, or repetitive tasks").

The Court adopts the latter view and finds that no apparent conflict exists between Reasoning Level four and the RFC in this case. Here, Godwin's limitations are less restrictive than only performing simple tasks—the RFC limits her to frequently working with detailed instructions. Tr. 34. "This case does not involve the type of direct and obvious conflict at issue when the [VE]'s characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill level provided for that job in the DOT." *Carey*, 230 F.3d 131, 145-46

(5th Cir. 2000). Accordingly, because there was no apparent conflict, the ALJ was not under a duty to raise it.

The record here does not present any apparent conflict between the VE's testimony and the DOT. Godwin's counsel had an opportunity to object to the VE's testimony or cross-examine him further regarding any conflicts between his testimony and the DOT, which he did. Tr. 69-70. Godwin did not identify any conflicts at the administrative hearing, and applicants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing. *Carey*, 230 F.3d 146-47. Therefore, the ALJ has met his step five burden, and reversal is improper as to this issue. *See* SSR 00-4p, 2000 WL 1898704, at *4; *Carey*, 230 F.3d at 146.

        2.    <u>Godwin did not raise the indirect conflict of the RFC's limitation of "occasional overhead reaching" and the DOT's description of an automotive accessory salesperson's responsibility to "frequently reach."</u>

Godwin next argues that the RFC limitation that Godwin "can occasionally reach overhead" (Tr. 34) conflicts with the automobile accessory salesperson job which "requires the ability to reach frequently." ECF No. 12 at 14 (citing SCO at 353, (1993)). "[T]he SCO defines 'reaching' as 'extending hand(s) and arm(s) in any direction[,]'" including overhead. *Joseph B v. Saul*, No. 4:19-CV-1285, 2020 WL 7024310, at *9 (S.D. Tex. Nov. 30, 2020) (quoting SCO, app. C); *see also*, SSR 85-15 1985 WL 56857 ("Reaching" means "extending the hands and arms in any direction[.]"). The DOT provides the following responsibilities for an automobile accessory salesperson:

> Sells automobile supplies and accessories, such as tires, batteries, seat covers, mufflers, and headlights: Ascertains make and year of automobile and reads catalog

> for stock number of item. Performs other duties as described under
> SALESPERSON (retail trade; wholesale tr.) Master Title.

DOT, Vol. 1, at 227 (available at www.occupationalinfo.org). Based on the text of the description, there is no indication that the job requires overhead reaching. The Commissioner argues that although the DOT and SCO indicate that an automobile accessory salesperson must be able to "frequently reach," this does not conflict with the "overhead reaching limitation" imposed by the RFC. ECF No. 16 at 4 ("The DOT and SCO do not provide subcategories setting forth the frequency of reaching by direction or outline whether the claimant must possess the capability to reach overhead."). As Godwin herself points out, "district courts in the Fifth Circuit have concluded that there is no direct conflict between the [VE]'s testimony and the DOT because the DOT does not describe any job duties that would require overhead reaching." *Joseph B v. Saul*, No. 4:19-CV-1285, 2020 WL 7024310, at *9 (S.D. Tex. Nov. 30, 2020); ECF No. 17 at 4. Accordingly, Godwin implicitly admits that as an indirect conflict, the ALJ was not required to resolve it. *See Nichols*, 2011 WL 2669056, at *6.

Here again, Godwin's counsel cross-examined the VE, and asked her if limiting Godwin's right-side overhead reaching to only "occasionally" would impact Godwin's ability to work as an automotive accessory salesperson. Tr. 69. The VE answered that it would not. Tr. 69. Godwin's counsel also asked about a hypothetical limitation of Godwin lifting less than ten pounds with the right hand and her potential off-task time and absenteeism, but she did not raise the issue of a conflict regarding the RFC's occasional overhead reaching limitation and the job's frequent reaching requirements or the DOT/SCO "reaching" definition. *Id.* at 69-70. In accordance with the Fifth Circuit's

instructions, the Court declines to reverse the ALJ's determination based on an implied conflict between the VE's testimony and the DOT when it was unchallenged.

Moreover, the Court finds that the testimony of the VE constitutes substantial evidence in support of the ALJ's determination that Godwin could perform her PRW. *See Calvert v. Comm'r, Soc. Sec. Admin.*, No. 2:18-CV-066-RSP, 2019 WL 1317313, at *3 (E.D. Tex. Mar. 22, 2019). Although the DOT's description may not accurately reflect the reality of an automotive accessory salesperson's responsibilities, the Court may not reweigh evidence such as the VE's testimony, and a claimant must raise an indirect conflict such as this one on cross. Accordingly, reversal is inappropriate as to this issue.

### B.    Substantial evidence supports the RFC's mental limitations.

Godwin also argues that the ALJ failed to properly account for her moderate limitation in ability to concentrate, persist, or maintain pace in the RFC assessment. ECF No. 12 at 15-18. When making his step-two analysis of Godwin's mental difficulties according to the "special technique" set out in 20 C.F.R. § 404.1520a, the ALJ found that Godwin had moderate difficulties in concentration, persistence, or maintaining pace. Tr. 33. But in the RFC the ALJ found that Godwin "[c]an without limitations maintain attention and concentration & work at a production rate pace." Tr. 34. Godwin argues that this is an internal conflict, and that the ALJ erred by not accounting for the moderate limitations in concentration, persistence, and pace he previously identified. ECF No. 12 at 17-18.

In determining his RFC, the ALJ stated that he "careful[ly] consider[ed] the entire record[,]" as well as "all symptoms and the extent to which the[] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" Tr. 34. He considered Godwin's medical records and testimony regarding her mental impairments, including

her reported "symptoms of depression, including sadness, crying spells, and poor sleep." Tr. 36
(citing Tr. 274, 277-78). The ALJ also discussed the positive impact of Godwin's medications, her
external relationship stressors "which are not uncommon and not indicative of disability[,]" and
her inconsistent reports of her psychological symptoms and where the record contraindicated those
reports. *Id.* at 36-37 (citing Tr. 274-75, 277-78, 311, 317).

The ALJ also evaluated the medical opinions and prior administrative medical findings,
including State agency psychological consultant ("SAPC") Lisa Fitzpatrick. Psy.D., who opined
that Godwin could (among other things) "attend and concentrate for extended periods . . . ." Tr. 37
(citing Tr. 83, 97-98). "Citing the same evidence, [SAPC David Atkins, Ph.D.,] rendered a similar
assessment[,]" opining that Godwin "could work with detailed (not complex) instructions and
make decisions." Tr. 37 (citing Tr. 108, 110, 116, 118) (cleaned up). The ALJ found these opinions
to be "well supported" and "rather consistent" with the record, and found that Godwin had "normal
memory, thought process, and attention[.]" Tr. 37-38. The ALJ also discussed the opinion of
Godwin's psychological consultative examiner, Sheree Gallagher, Psy.D., who opined "somewhat
persuasive[ly]" that Godwin "had normal memory, thought process, attention," and "exhibited
intact attention[.]" Tr. 38. The RFC reflected these findings. Tr. 34. Thus, substantial evidence
supported the ALJ's RFC.

Godwin disputes this finding, arguing that the ALJ's finding that Godwin "[c]an without
limitations maintain attention and concentration and work at a production pace" fails as a matter
of law because it contradicts his finding that Godwin has moderate mental limitations. ECF No.
12 at 16 (quoting Tr. 34). But The ALJ's findings regarding Godwin's mental limitations at step
two need not match the RFC determinations, as one has to do with impairments and the other with
function. Rather, the analysis taken at the earlier steps provides substantial evidence for the later

RFC assessment. *See Hardman v. Colvin*, 820 F.3d 142, 149 n.3 (5th Cir. 2016). The Court has held in similar cases that reversal is not required where the ALJ accommodates mental limitations in the RFC. *E.g. Westover v. Astrue*, No. 4:11-cv-816-Y, 2012 WL 6553102, at *9 (N.D. Tex. Nov. 16, 2012) ("[T]he ALJ's RFC determination limiting [the claimant] to only performing work that involved detailed instructions does not" inherently contradict "the ALJ's finding in the 'special technique' that [the claimant] was moderately limited in his ability to maintain concentration, persistence, or pace."); *Bauer v. Berryhill*, No. 7:17-cv-00128-M-BP, 2018 WL 3999687, at *7 (N.D. Tex. July 27, 2018) ("[T]he ALJ did not commit error by not including moderate difficulties in concentration, persistence, or pace in her . . . RFC determination, because the functional limitations she did include accounted for those moderate difficulties and were based on the evidence."), *rec. adopted*, No. 7:17-cv-00128-M, 2018 WL 3993812 (N.D. Tex. Aug. 21, 2018); *Holmes v. Astrue*, No. 3:11-cv-2634-G BH, 2013 WL 638830, at *16 (N.D. Tex. Jan. 25, 2013) (affirming the Commissioner where the ALJ found "that [the p]laintiff's moderate limitation in maintaining concentration, persistence, or pace restricted his RFC only to the extent that he could concentrate for two-hour intervals and understand, remember, and carry out detailed, but not complex, instructions"), *rec. adopted*, No. 3:11-cv-2634-G BH, 2013 WL 646510 (N.D. Tex. Feb. 20, 2013). Likewise, here, the ALJ did not err by finding that she can maintain attention, concentration, and pace without limitations, but can "frequently work with detailed instructions, and cannot work with complex instructions." Tr. 34. Further, Godwin's argument that that the ALJ did not resolve inconsistencies between the opinions of Dr. Atkins and Dr. Fitzpatrick fails for the reasons discussed below. *See infra* p. 18.

The ALJ properly weighed the medical opinions of record, and a reasonable mind could accept her conclusion that Godwin's moderate limitations in concentration, persistence, or pace

did not preclude her from performing the work outlined in the ALJ's RFC. *Ripley*, 67 F.3d at 555. Substantial evidence supports the RFC (*see supra* pp. 14-15), so reversal is improper as to this issue.

### C.    The ALJ was not required to order a consultative exam.

Finally, Godwin argues that the ALJ did not adequately develop the record and erred as a matter of law by not ordering a consultative examination. ECF No. 12 at 19-21. An ALJ has a duty "to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). An ALJ fulfills this duty by ordering a consultative examination when it is "necessary to enable the ALJ to make the disability determination." *Id.* An ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (5th Cir. 2001). The decision to require a consultative examination is with within the ALJ's discretion. *Pierre v. Sullivan*, 884 F.2d 799, 802-03 (5th Cir. 1989). Courts reverse the Commissioner only "if the claimant shows that (1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012), 691 F.3d 730, 733 (5th Cir. 2012) (citation omitted). "A consultative examination is required . . . only if the record establishes that such an examination is *necessary* to enable the ALJ to make the disability decision.'" *Hardman*, 820 F.3d, at 148 (5th Cir. 2016) (cleaned up) (emphasis in original).

Here, the ALJ "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c," including the opinions of doctors Fitzpatrick, Atkins, and Gallagher. Tr. 34, 37-38. Godwin argues that a

consultative exam was necessary because (1) doctors Fitzpatrick and Atkins rendered conflicting opinions; (2) Dr. Gallagher's opinion is vague; and (3) the record contains gaps. ECF No. 12 at 17-18, 20-21. The Commissioner argues that the record contained sufficient evidence so that the ALJ was not required to order another consultative mental examination. ECF No. 16 at 7-8.

Godwin's arguments that the evidence is inconsistent fails. She does not argue that there is a lack of medical opinion evidence, only that the existing evidence is inconsistent. ECF No. 11-3 at 20. This argument is essentially a request that the Court reweigh the evidence and assign more weight or a different meaning to individual medical reports, diagnoses, or other pieces of evidence than the ALJ did. This is not a proper challenge to the ALJ's RFC. Rather, it is an argument that the ALJ did not give enough weight to those parts of the record. "These are precisely the kinds of determinations that the ALJ is best positioned to make." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). The Court may not reweigh the evidence or substitute its judgment for the ALJ's. *Harris*, 209 F.3d at 417.

Godwin next argues that Dr. Gallagher's opinion "provided only vague limitations in evaluating the functional capacity that Plaintiff would be 'hindered in her ability to concentrate on and complete tasks at and work on a consistent basis'" ECF No. 12 at 20. She also argues that "[t]he most recent records from treating providers regarding [Godwin]'s mental impairments are from 2020, just after the alleged onset date (Tr. 276)." ECF No. 12 at 21.

In Response, the Commissioner illustrates that Dr. Gallagher's opinion was not vague. ECF No. 16 at 8 (citing Tr. 319-20 (Dr. Gallagher observed that Godwin's "effect was constricted, her mood was dynamic, and her energy was low" and that Godwin's "ability to concentrate on and complete tasks at work on a consistent basis was impaired by anxiety and depression, but she was oriented to person, place, time, and situation.")). But regardless, Godwin does not show that the

18

record was insufficient for the ALJ to make a determination. The record included hearing testimony; two years' worth of medical records; assessments made by the state agency medical consultants and SAPCs; and medical opinion from Godwin's psychological consultative examiner. In determining her RFC, the ALJ stated he "careful[ly] consider[ed] the entire record[,]" as well as "all symptoms and the extent to which the[] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" Tr. 34; *see also supra* pp. 14-15. Also, Godwin was represented by counsel at the hearing, so no "heightened duty to scrupulously and conscientiously explore all relevant facts" arose. *Castillo v. Barnhart*, 325 F.3d 550, 552-53 (5th Cir. 2003).

The only indication that the record was ambiguous or so inadequate to prohibit a proper evaluation of Godwin's impairments is what appears to be a scrivener's error on the part of the ALJ: "The [ALJ] denies [Godwin's request for a consultative examination] because the [ALJ] does not find an inconsistency in the evidence and finds that the evidence as a whole is insufficient to allow a decision on the claim." Tr. 28 (internal citations omitted). Godwin asserts that this "only serves to underscore the lack of care and consideration the government afforded [Godwin]'s disability applications." But the remainder of the ALJ's decision and the proceedings as a whole belie this. *See supra* pp. 14-15.

Moreover, Godwin has not shown prejudice. A plaintiff establishes prejudice when she shows that a consultative examination "could and would have adduced evidence that might have altered the result". *Hardine v. Kijakazi*, No. 21-60226, 2022 WL 2070399, at *2 (5th Cir. June 8, 2022). Godwin "does not offer any argument or evidence to show how additional consultative examinations would have led to a more favorable decision." *Bell v. Kijakazi*, No. 3:22-CV-01190-G-BH, 2023 WL 5836826, at *11 n.10 (N.D. Tex. July 14, 2023) (internal quotation marks and

citation omitted), *rec. adopted*, No. 3:22-CV-1190-G-BH, 2023 WL 5835972 (N.D. Tex. Sept. 8, 2023). Rather, she offers only naked speculation that an additional consultative exam would have moved the needle in her favor. Because Godwin has not shown that that the ALJ's decision not to order a consultative exam prejudiced her, reversal is improper as to this issue.

Godwin relies almost exclusively on *Hardine v. Kijakazi* to support her argument. ECF No. 12 at 20. In *Hardine*, the Fifth Circuit vacated the Commissioner's decision to deny benefits and remanded it because the Commissioner committed prejudicial error in failing to order a consultative exam. 2022 WL 2070399, at *2. The *Hardine* ALJ found that a note from the claimant's treating physician was "not clear" and "vague" and that another note from the same doctor did "not provide specific functional limitations on the claimant's physical activities or on the claimant's ability to work." *Id.* (internal quotation marks omitted). Additionally, the ALJ identified a gap in the record "concerning whether [the claimant] suffered from anxiety and depression[,] . . . because the record lacked a 'definitive diagnosis[,]'" although the claimant had a reported history of anxiety. *Id.* This case involved the "treating source rule," which (for claims filed before March 27, 2017) generally gives "controlling weight" to a treating physician. 20 C.F.R. § 404.1527(c)(2). As the Commissioner rightly points out, his rule does not apply to claims filed on or after March 27, 2017, such as Godwin's. ECF No. 16 at 8-9. Godwin does not dispute this. Moreover, the Court finds *Hardine* to be distinguishable from the present case as the record is altogether sufficient to substantially support the ALJ's RFC.

Godwin has neither shown that the ALJ failed to fulfill his duty to develop the record adequately, nor has she demonstrated that a consultative examination would have led to a more favorable decision. Accordingly, remand is not warranted on this basis.

## IV.   CONCLUSION

Because the ALJ employed proper legal standards and substantial evidence in the record supports the ALJ's conclusions regarding the RFC, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** the case.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

It is so **ORDERED** on May 30, 2024.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE